UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **KEVIN BRADLEY, Individually and on Behalf of All Others Similarly Situated,** | **Case No. 1:25-cv-00650** |
| **Plaintiff,** | |
| **OPEN LENDING CORPORATION, CHARLES D. JEHL, KEITH A. JEZEK, and JOHN J. FLYNN,** | **CLASS ACTION** |
| **Defendants.** | |

**MOTION OF LABORERS' DISTRICT COUNCIL AND CONTRACTORS' PENSION FUND OF OHIO'S FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

Movant Laborers' District Council and Contractors' Pension Fund of Ohio ("Ohio Laborers") files this memorandum of law in support of its Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Motion"). Ohio Laborers moves this Court, under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for entry of an order: (i) appointing Ohio Laborers as Lead Plaintiff; and (ii) approving Ohio Laborers' selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel and Forman Watkins & Krutz LLP ("Forman Watkins") as Liaison Counsel for the proposed class.[1]

This Motion is made on the grounds that Ohio Laborers believes it is the "most adequate plaintiff" under the PSLRA and should therefore be appointed Lead Plaintiff. Specifically, Ohio

---

[1] Local Rule CV-7(g) requires a conference of counsel before filing motions. Pursuant to the PSLRA, however, any putative class member, regardless of whether it filed a complaint, may file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3). At this time, Ohio Laborers cannot know if anyone else plans to seek appointment as lead plaintiff until after June 30, 2025, the date by which all lead plaintiff motions must be filed. Under these narrow circumstances, Ohio Laborers requests that the Local Rule CV-7(g) conferral requirement be waived and/or it be permitted to supplement this certificate of conference once putative lead plaintiffs are identified.

1

Laborers believes it has the "largest financial interest" in the relief sought by the class in this action by virtue of, among other things, the almost $86,949.89 in losses which Ohio Laborers incurred on its purchases of over 16,762 shares of Open Lending between February 24, 2022, and March 31, 2025 (the "Class Period"). Ohio Laborers also otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure because its claims are typical of other class members' claims and because Ohio Laborers will fairly and adequately represent the interests of the class. Moreover, Ohio Laborers is a paradigmatic Lead Plaintiff under the PSLRA because it is a sophisticated institutional investor with a substantial financial stake in the litigation, which guarantees effective monitoring and supervision of counsel.

This Motion is supported by the accompanying Declaration of K. B. Battaglini, and exhibits annexed thereto, the pleadings and other filings herein, and such other written or oral argument as may be permitted by the Court.

**INTRODUCTION**

On May 1, 2025, Plaintiff Kevin Bradley, represented by the law firms Holzer & Holzer LLP and Glancy Prongay & Murray LLP, filed a securities class action case against Open Lending Corporation ("Open Lending" or the "Company") and three of the Company's senior executives: Charles D. Jehl (the Company's CFO at all relevant times and CEO and COO from March 22, 2024 until March 31, 2025); Keith A. Jezek (the Company's CEO from October 6, 2022 until March 22, 2024); and John J. Flynn (the Company's CEO from April 2000 until October 6, 2022) (collectively, the "Individual Defendants," and together with Open Lending, "Defendants"). The claims against Defendants were brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, on behalf of all

persons or entities that purchased or otherwise acquired Open Lending common stock between February 24, 2022 and March 31, 2025, inclusive (the "Class Period").

According to the Complaint, ECF No. 1, Defendants made misrepresentations about the Company's business, operations, and prospects, including the capabilities of the Company's risk-based pricing models, the Company's profit-share revenue, and value of the Company's 2021 and 2022 vintage loans, and the underperformance of the Company's 2023 and 2024 vintage loans. ¶51. Open Lending investors, including Ohio Laborers, incurred significant losses after the Company's delay in its 2024 Annual Report due to additional profit share revenue adjustments, ¶¶52–53, and as investors learned that the Company had been delinquent and even defaulted on some of the 2021 through 2024 vintage loans, ¶¶54–56.

Under the PSLRA, the Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, Ohio Laborers is the "most adequate plaintiff" under the PLSRA and should be appointed as Lead Plaintiff because, among other things, Ohio Laborers has the largest financial interest in the relief sought by the Class, incurring almost $86,949.89 in losses on its purchases of 16,762 shares of Open Lending during the Class Period. *See* Ex. B (Loss Chart).[2]

---

[2] Unless otherwise indicated, citations to "Ex. __" are to exhibits to the Declaration of K. B. Battaglini in Support of the Motion of Ohio Laborers for Appointment as Lead Plaintiff and Approval of its Selection of Counsel, submitted concurrently with the Motion and this memorandum.

Ohio Laborers also meets the typicality and adequacy requirements of Rule 23 because its claims are typical of absent Class members, and because it will fairly and adequately represent the interests of the Class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Indeed, Ohio Laborers is precisely the type of sophisticated institution that Congress intended to empower to lead securities class actions. Ohio Laborers possesses the capability, resources, and experience to oversee this complex litigation and guarantee the vigorous prosecution of the action.

Further, as stated in its Certification, Ohio Laborers is committed to actively monitoring and vigorously pursuing this action for the benefit of the Class, will strive to provide fair and adequate representation to obtain the largest possible recovery for the Class, and fully understands the Lead Plaintiff's obligations to the Class under the PSLRA. *See* Ex. A (PSLRA Certification).

Based on Ohio Laborers' significant financial interest and its commitment and ability to oversee the action, Ohio Laborers requests that the Court appoint it as Lead Plaintiff and approve its selection of Cohen Milstein as Lead Counsel and Forman Watkins as Liaison Counsel. for the proposed Class. See 15 U.S.C. §78u-4(a)(3)(B)(v). Cohen Milstein is a nationally recognized securities class action litigation firm and has recovered billions of dollars for defrauded investors and is eminently qualified to prosecute the case, and Forman Watkins also has extensive experience in complex litigation.

**STATEMENT OF FACTS**

Open Lending provides loan services to automotive lenders, specializing in loan analytics, risk-based pricing and targets the financing needs of non-prime borrowers.[3] ¶20. The Company developed the Lenders Protection Platform ("LPP"), a cloud-based lending enablement platform that underwrites default insurance by "linking auto lenders to the Company's insurance partners."

---

[3] Citations to ¶__ refer to the Complaint, unless otherwise noted.

*Id.* LPP purportedly uses risk-based pricing models that allow auto lenders to assess the credit risk of a borrower. *Id.* The Company does this using their proprietary data and real-time underwriting of loan default insurance coverage from insurers. *Id.* The Company's revenue make-up includes program fees paid by auto lenders for the use of its platform, profit-sharing with the Company's insurance partners providing default insurance to auto lenders, and fees paid by insurance partners for claims administration services. *Id.*

On February 24, 2022, the first date of the Class Period, Open Lending issued a press release announcing its financial results for the fiscal quarter ended December 31, 2021, which were also disclosed in the Company's 2021 10-K filed on February 28, 2022. ¶¶21, 22. The Company recorded $30.9M in estimated future profit share on business written in historic periods, and assured investors that any changes in contract assets were driven by realized portfolio performance as opposed to changes in prospective estimates. ¶21. The 2021 10-K reported the Company's profit share revenue recognition procedure complied with ASC 606 by "recogniz[ing] [revenue] when the contractual performance obligation is satisfied." ¶23. The 2021 10-K also explained its LPP risk-based pricing model in-depth. ¶24.

On May 5, 2022, and May 6, 2022, Open Lending issued a press release and filed its Q1 2022 10-Q, respectively, affirming that the Company's revenue had increased 14% over the same period in the previous year, and that profit share revenue increased 2% in 2021 compared to the same period in 2020. ¶¶25–26. The press release and supplemental financial information purported to provide the Company's financial results and assure investors that changes in contract assets were driven by realized portfolio performance as opposed to changes in prospective estimates.

On August 5, 2022, Open Lending filed its Q2 2022 10-Q stating that the Company recorded $26.3M in profit share compared to $27M in anticipated profit share. ¶28. The Company

5

also recorded $2.8M and $5.5M during the three and six months ending June 30, 2022 respectively, in estimated future revenue, compared to $11.8M and $16.9M in estimated future revenue during the three and six months ending June 30, 2021 respectively. *Id.*

On November 3, 2022, Open Lending issued a press release announcing its financial results for the quarter ended September 30, 2022 stating that the Company facilitated 42,186 certified loans during the third quarter of 2022, compared to 49,332 certified loans in the third quarter of 2021. ¶29. Total revenue was $50.7M during the third quarter of 2022, compared to $58.9M in the third quarter of 2021. *Id.* On November 4, 2022, Open Lending filed its Q3 2022 10-Q and disclosed that it recorded $24.9M in anticipated profit share as compared to $27.9M in anticipated profit share during Q3 2021. ¶30. The Company also recorded $1.7M and $7.1M during the three and nine months ending September 30, 2022 respectively, in estimated future revenue, compared to $7.5M and $24.4M in estimated future revenue during the three and nine months ending September 30, 2021 respectively. *Id.*

On February 23, 2023, Open Lending announced its financial results for the fiscal quarter and full year ended December 31, 2022. ¶31. Again, the total revenue and gross profit were lower for this quarter than the same period the year prior. *Id.* In the 2022 10-K Open Lending filed on February 28, 2023, it announced that the Company recorded a "$5.7 million reduction in estimated future profit share revenues related to business in historic vintages primarily as a result of higher than anticipated prepayment rates, partially offset by lower loan default rates and severity of losses" and that "[d]uring the year ended December 31, 2021, we recorded a $30.9 million increase in estimated future profit share revenues on certified loans originated in historic vintages primarily due to lower than anticipated prepayment rates, loan default rates and severity of losses." ¶32.

6

Open Lending once again reported that the Company recognizes profit share in accordance with ASC 606, and again "touted" LPP's purported risk-based pricing model. ¶¶33–34.

Throughout 2023, Open Lending certified fewer loans each quarter than it had in the same quarter of the previous year, revenue was lower each quarter than in the same quarter of the previous year, and future profit share was lower than in each quarter of the previous year. ¶¶35, 36 (Q1 2023); ¶¶37, 38 (Q2 2023); ¶¶39, 40 (Q3 2023). The Company's 2023 10-K, filed in February of 2024 stated that the Company's negative share profit revenue was $14.3M, although the Company recorded $66.1M in anticipated profit share in 2023. ¶¶42–44.

The downward trend in revenue and certified loans continued in 2024, with each quarter once again trending down from the same quarter the previous year; each of the quarterly financial filings, the 10-Qs, disclosed that Open Lending had less revenue than the same period the year before and that the profit share revenue had decreased. ¶¶45, 46 (Q1 2024); ¶¶47, 48 (Q2 2024); ¶¶49, 50 (Q3 2024).

The Complaint alleges that, consistent with the above, Defendants made materially false and/or misleading statements regarding the capabilities of the Company's risk-based pricing models and the Company's profit share revenue, and that Open Lending failed to disclose that the 2021 and 2022 vintage loans had lost value compared to their balances and that the Company was misrepresenting the underperformance of the 2023 and 2024 loans. ¶51.

According to the Complaint, investors began to learn the truth on March 17, 2025, when Open Lending announced that it would not be able to timely file its 2024 Annual Report because the Company "requires additional time to finalize its accounting and review processes specifically related to its profit share revenue and related contract assets." ¶52.

On this news, Open Lending's share price fell $0.40 or 9.28%, to close at $3.91 per share on March 17, 2025, on unusually heavy trading volume. ¶53. The stock continued to fall the following trading day, declining $0.42, or 10.87%, to close at $3.49 on March 18, 2025, on unusually heavy trading volume. *Id.*

The truth continued to emerge over the month of March, culminating in the March 31, 2025 fourth quarter and full-year 2024 financial results, which revealed quarterly revenue of negative $56.9 million due in part to "a $81.3 million reduction in estimated profit share revenues related to business in historic vintages" … "primarily due to heightened delinquencies and corresponding defaults associated with loans originated in 2021 through 2024." ¶54. That same day, Open Lending announced the "Executive Transition" of Defendant Jehl—who had been the Company's CEO, COO, and CFO—and the appointment of a new CEO and a new COO. ¶55.

On this news, Open Lending's stock price plummeted by $1.59 per share, or by over 57%, to close at $1.17 per share on April 1, 2025, on unusually heavy trading volume. ¶56.

## ARGUMENT

**I.  Ohio Laborers Is the Most Adequate Plaintiff and Should Be Appointed Lead Plaintiff**

The PSLRA sets forth the procedure for the appointment of a lead plaintiff in class actions under the Exchange Act and establishes a presumption that the "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Ohio Laborers is the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

**A.  Ohio Laborers' Motion Is Timely**

Under the PSLRA, any class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). On May 1, 2025, plaintiff Kevin Bradley filed a

8

securities class action against Defendants in this District, asserting claims under the Exchange Act during the Class Period. That same day, Mr. Bradley's counsel published notice on *Business Wire*, advising putative class members of the pendency of the action and claims asserted, the Class Period, and the right to move the Court to be appointed as lead plaintiff by June 30, 2025. *See* Ex. C (Notice of Pendency). As Ohio Laborers' Motion is timely, Ohio Laborers is entitled to be considered for appointment as Lead Plaintiff.

### B. Ohio Laborers Possesses the Largest Financial Interest in the Relief Sought by the Class

Ohio Laborers should be appointed Lead Plaintiff because it has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). During the Class Period, Ohio Laborers purchased 16,792 shares of Open Lending common stock and incurred almost $86,949.89 in losses. *See* Ex. B. Ohio Laborers is not aware of any other applicant seeking Lead Plaintiff appointment that has a larger financial interest. Accordingly, Ohio Laborers has the largest financial interest of any qualified movant and is entitled to the presumption under the PSLRA that it is the "most adequate plaintiff." 15 U.S.C. § 78u- 4(a)(3)(B)(iii).

### C. Ohio Laborers Satisfies Rule 23 Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, Ohio Laborers also "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4); *see also Pang v. Levitt*, No. 1:22-CV-1191-LY, 2023 WL 11999259, at *2 (W.D. Tex. Mar. 7, 2023) ("For purposes of selecting a lead plaintiff in securities class actions, the typicality and adequacy requirements of Rule 23 "are the only relevant provisions" the court must examine." (citation omitted)).

Ohio Laborers' claims are typical of all other Class members. Typicality is achieved where the proposed lead plaintiff's claims "share the same essential characteristics of the putative class," and "[i]f the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *In re Cassava Scis. Inc. Sec. Litig.*, 342 F.R.D. 413, 417 (W.D. Tex. 2022) (citing *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)). Here, like all other Class members, Ohio Laborers purchased Open Lending common stock during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements or omissions and suffered damages. Thus, Ohio Laborers' claims arise from the same factual predicate and involve substantially the same legal arguments as those of the other Class members. Accordingly, Ohio Laborers' claims are typical of those of the purported Class members.

Ohio Laborers likewise satisfies the adequacy requirement of Rule 23. A lead plaintiff movant demonstrates its adequacy by showing that it has sufficient "willingness and ability of the representatives to take an active role in and control the litigation to protect the interests of absentees." *Schneider v. Natera, Inc.*, No. 1:22-CV-00398-LY, 2022 WL 22442715, at *3 (W.D. Tex. July 26, 2022). In determining adequacy, the Court considers "'the zeal and competence of the [lead plaintiff's] counsel[.]" *Id.* Ohio Laborers' substantial financial stake in this litigation provides it with the incentive to vigorously represent the Class's claims.[4] Ohio Laborers' interests are perfectly aligned with those of the other Class members and are not antagonistic in any way; there are no facts to suggest any actual or potential conflict of interest or other antagonism between Ohio Laborers and other Class members. Finally, as described below, Ohio Laborers has also demonstrated its adequacy through its selection of Cohen Milstein and Forman Watkins to represent the Class in this action. Accordingly, Ohio Laborers satisfies Rule 23's adequacy requirement.

---

[4] *See* Ex. A ¶4; Ex. B.

### D.  Ohio Laborer is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

Ohio Laborers is a sophisticated institutional investor, the paradigmatic Lead Plaintiff envisioned by Congress in its enactment of the PSLRA. *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 439–40 (S.D. Tex. 2010) (collecting cases) ("the PSLRA expresses a strong preference for institutional investors to serve as lead plaintiffs"); S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (1995) ("The [c]ommittee intends to increase the likelihood that institutional investors will serve as lead plaintiffs[.]"); H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

## II.  The Court Should Approve of Ohio Laborers' Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). This Court "should not disturb [the lead plaintiff's] choice of counsel unless it is necessary to 'protect the interests of the class.'" *Robison v. Digital Turbine, Inc.*, No. 1:22-CV-00550-DAE, 2022 WL 17881476, at *8 (W.D. Tex. Dec. 19, 2022) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)).

Ohio Laborers has selected Cohen Milstein to serve as Lead Counsel, and this selection should be approved. 15 U.S.C. §78u-4(a)(3)(B)(v). Cohen Milstein is a firm with undisputed skill in litigating securities fraud class actions. Most recently, the National Law Journal named Cohen Milstein's Securities Litigation practice a Practice of the Year in 2024, Chambers USA named Cohen Milstein Top Ranked for Securities Litigation in 2024, and Law 360 named Cohen Milstein 2023 Practice Group of the Year in Securities, among other accolades. Cohen Milstein has worldwide expertise as counsel for U.S. and non-U.S. institutional investors who have been the victims of securities fraud. *See* Ex. D (Cohen Milstein Firm Resume). By applying innovative legal

theories and litigation strategies, Cohen Milstein has recovered billions of dollars for investors in some of the largest and most complex securities class actions. A few of Cohen Milstein's notable recoveries include: a $1 billion settlement in a securities fraud class action lawsuit against Wells Fargo, captioned *In re Wells Fargo & Company Securities Litigation*, No. 1:20-cv-04494 (S.D.N.Y.); a $500 million settlement in the mortgage-backed securities class action against Countrywide Financial Corp., captioned *Maine State Retirement System v. Countrywide Financial Corporation*, No. 10-cv-302 (C.D. Cal.); a $275 million settlement in a mortgage-backed securities class action against the Royal Bank of Scotland, captioned *New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Group, plc*, No. 08-cv-5310 (S.D.N.Y.); $335 million in settlements in a class action against Residential Accredit Loans, Inc. and various investment banks, captioned *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781 (S.D.N.Y.); a $175 million settlement in a certified class action stemming from the Deepwater Horizon oil spill, captioned *In re BP p.l.c. Securities Litigation*, 4:10-md-02185 (S.D. Tex.); and a $90 million settlement in a class action against MF Global, captioned *Rubin v. MF Global, Ltd.*, No. 08-cv-2233 (S.D.N.Y.). Ohio Laborers has also selected Forman Watkins to serve as Liaison Counsel. *See* Ex. E (Forman Watkins Firm Resume).

Thus, the Court may be assured that by granting Ohio Laborers' Motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, Ohio Laborers respectfully requests that the Court enter an Order: (i) appointing it as Lead Plaintiff; (ii) approving its selection of Cohen Milstein as Lead Counsel for the Class and Forman Watkins as Liaison Counsel; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: June 30, 2025	Respectfully submitted,

/s/ K. B. Battaglini
K. B. Battaglini, Texas Bar No. 01918060
C. Mitch McGuffey (*pro hac vice* forthcoming)
FORMAN WATKINS & KRUTZ LLP
4900 Woodway Drive, Suite 940
Houston, Texas 77056
713.210.4371 direct
kb.battaglini@formanwatkins.com
mitch.mcguffey@formanwatkins.com

*Proposed Liaison Counsel for Ohio Laborers and the Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Steven J. Toll (*pro hac vice* forthcoming)
Margaret (Emmy) Wydman (*pro hac vice* forthcoming)
1100 New York Avenue, N.W., Suite 800
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
ewydman@cohenmilstein.com

Christopher Lometti (*pro hac vice* forthcoming)
88 Pine St., 14th Floor
New York, NY 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
clometti@cohenmilstein.com

*Attorneys for Ohio Laborers and Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I, K. B. Battaglini, hereby certify that on June 30, 2025, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's CM/ECF automated filing system.

/s/ K. B. Battaglini
K. B. Battaglini
